IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OLAOLUWA FAPARUSI, | ) CASE NO. 1:16 CV 1586 |
| | ) |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| CASE WESTERN RESERVE | ) |
| UNIVERSITY, *et al.*, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendants. | ) |

## Introduction

Before me by referral[1] in the matter of the *pro se* complaint by Olaoluwa Faparusi against Case Western Reserve University (CWRU) *et al*[2] is Faparusi's motion under Rule 65 of the Federal Rules of Civil Procedure for a temporary restraining order and preliminary injunction requiring CWRU to reinstate Faparusi to the academic program from which he was earlier suspended.[3] CWRU responded by moving to dismiss the entire complaint under Rule 12(b)(6) for failure to state any claims upon which relief may be granted.[4] Faparusi has replied to that motion.[5]

---

[1] ECF # 10.

[2] ECF # 1.

[3] ECF # 3.

[4] ECF # 5.

[5] ECF # 6.

For the reasons that follow, I will recommend that Faparusi's motion for a temporary restraining order and/or for injunctive relief be denied. CWRU's motion to dismiss will be considered in a separate report and recommendation.

## Facts

Simply stated, the complaint and motion for a TRO and injunction allege that Faparusi, an African American student at CWRU, used a women's restroom at a CWRU facility while pressed for time during the period he was studying for an examination during his sophomore year on March 1, 2016.[6] While in a restroom stall, he was verbally confronted by two female students who accused Faparusi of taking pictures in the restroom.[7]

Following receipt of an incident report, CWRU began an investigation and terminated his on-campus housing agreement.[8] During the course of the investigation Faparusi maintained that he never took any pictures inside the restroom, and officers found none when they checked his cell phone camera.[9] Witness statements, including descriptions of the cell phone and of the person seen in the restroom stall, included inconsistencies in the details of the phone and in Faparusi's dress and hair.[10]

---

[6]ECF # 6 at 6-7.

[7]*Id*. at 7.

[8]*Id*. at 8.

[9]*Id*. at 7-8.

[10]*Id*. at 8-11.

At the hearing itself, which occurred after the investigation, Faparusi contends that the notice of the hearing was defective in only specifying that the hearing would be concerning a charge of sexual exploitation, instead of also noting that he was also facing a charge of disorderly conduct.[11] More importantly, Faparusi argues that the hearing officer had an *ex parte* communication with the complainants without notice to Faparusi, and without the conversation being documented in the hearing record that was available to Faparusi to review.[12] Further, Faparusi asserts that information gained from this *ex parte* communication was relied upon by the hearing officer as "the rational for his decision,"[13] which was to suspend Faparusi through June 2, 2017.[14]

Faparusi then appealed the decision within the university hearing process, initially claiming that: (1) new information not available at the time of the hearing would have altered the decision and (2) the established procedures for conducting the hearing were not followed.[15] The new information referred to in the first ground was the issue of mistaken identity, with emphasis on witness differences in the description of the alleged perpetrator's hair and clothing.[16] The second ground encompassed arguments that:

---

[11] *Id*. at 11.

[12] *Id*. at 11-12.

[13] *Id*. at 12.

[14] *Id*. Ex. 9 at 2.

[15] ECF # 3 at 12.

[16] *Id*.

- there was "material deviation" from the written hearing process;

- there was no impartial investigation;

- the burden of proof used by the hearing officer was lower than the preponderance of the evidence standard called for in the policy; and

- Faparusi received improper notice of the offenses for which he was charged.[17]

Faparusi contends that these facts establish that CWRU's hearing and decision to suspend him were done "in violation of his rights under the Due Process Clause of the Fourteenth Amendment,"[18] and further that CWRU and the individual employee defendants breached CWRU's contract with Faparusi in the way the hearing was conducted.[19]

In the motion to dismiss, all defendants argue that Counts One, Two, Three and Five, which purportedly raise federal Due Process issues, must be dismissed because the Fourteenth Amendment's due process and fundamental fairness guarantees do not apply to the policies and procedures of private colleges.[20] The defendants further assert that Count Four, which is a state law breach of contract claim, must here be dismissed because, under Ohio law, where a student makes a breach of contract claim against an educational institution, the court must defer to the decision of the school unless the school's action is such a substantial departure from accepted academic norms as to demonstrate a lack of

---

[17] *Id.* at 13.

[18] ECF # 1 at Counts One, Two, Three and Five.

[19] *Id.* at Count Four.

[20] ECF # 5 at 3-4.

professional judgment.[21] Alternatively, the defendants argue that the Court should decline to exercise supplemental jurisdiction over the state law claims.[22]

As noted, Faparusi has responded to the motion to dismiss.[23]

## Analysis

**A.     Standard of review**

*1.     Preliminary injunction*

Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of a preliminary injunction. As the Supreme Court has stated:

> **The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be had. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is often granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing[,] and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.**[24]

As outlined by the Sixth Circuit, there are four relevant factors to be considered and balanced by the court in adjudicating a motion for injunctive relief under Rule 65:

1.     Whether the movant has a strong likelihood of success on the merits;

---

[21]*Id*. at 4 (citation omitted).

[22]*Id*. at 6.

[23]ECF # 6.

[24]*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)(internal citations omitted).

  2.  Whether the movant would suffer irreparable injury without the injunction;

  3.  Whether the issuance of the injunction would cause substantial harm to others;

  4.  Whether the public interest would be served by issuing the injunction.[25]

The Sixth Circuit has emphasized that these four considerations are "factors to be balances, not prerequisites that must be met."[26] Moreover, a district court not be required to make a specific finding as to each of the four factors if resolving fewer issues would be dispositive.[27] However, "'it is generally useful for the district court to analyze all four of the preliminary injunction factors.'"[28]

## B. Application of standard

In the highly analogous case of *Pierre v. University of Dayton*,[29] the district court denied a motion for an injunction by noting that "a suspension from school is not irreparable" because "after the suspension ends, [the plaintiff] will have the opportunity to petition for re-enrollment to the University."[30]

---

[25] *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007)(citation omitted).

[26] *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)(citation omitted).

[27] *Certified*, 511 F.3d at 542 (citation omitted).

[28] *Id*. (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 n.3 (6th Cir. 2000)).

[29] 143 F.Supp.3d 703 (S.D. Ohio 2015).

[30] *Id*. at 714 (citation omitted).

Moreover, after first noting that the Sixth Circuit has affirmed that courts will not interfere with a private university's right to enforce disciplinary standards without a showing of clear abuse of discretion, and that a university's conduct during disciplinary proceedings is evaluated under the rubric of "whether the proceedings fell within the range of reasonable expectations of one reading the relevant rules, an objective reasonableness standard," the *Pierre* court concluded that the plaintiff there had not shown a likelihood of success on the merits because "the process promised him and provided to him was fundamentally fair."[31] Based on an evaluation of Faparusi's claims here, I recommend that the same conclusion be drawn, and that Faparusi be found not likely to succeed on the merits.

This is even more true when only the federal claims of Title IX and due process are considered.[32]

In addition, as to the factor of a substantial harm to others, *Pierre* noted that the original complainant, indeed all students, have the right to attend classes in an environment free from sexual harassment.[33] Given the sexual norm that Faparusi was found to have violated, and the ubiquitous presence of women's restrooms on a college campus, all women on the CWRU campus potentially face a risk of substantial harm in the event that Faparusi

---

[31]*Id*. at 713.

[32]*Carney v. University of Akron*, 2016 WL 4036726 (N.D. Ohio July 28, 2016); *Marshall v. Ohio University, et al.,* 2015 WL 7254213 (S.D. Ohio Nov. 17, 2015); *Doe v. Case Western Reserve University*, 2015 WL 5522001 (N.D. Ohio Sept. 16, 2015).

[33]*Pierre*, 143 F.Supp. 3d at 714 (citation omitted).

were immediately returned to campus as a student. Unlike *Pierre*, I see no option, such as a restraining order forbidding contact with a particular person or place, as an alternative way to permit Faparusi to return to campus but also ensure no substantial harm occurs to the women on campus.

Finally, as to the factor of whether an injunction would serve the public interest, the *Pierre* court concluded that although the public has an interest in seeing that a private college comports with the general notions of fair play in conducting individual disciplinary proceedings, the public has an even greater interest in knowing that such institutions provide a safe on-campus atmosphere conducive to study and learning for all students.[34]

Thus, and as set forth above, because I recommend finding that Faparusi is not likely to succeed on the merits of any of his claims, that his alleged injury is not irreparable, that the public interest is served by allowing private universities to carry out their mission of providing a safe environment for learning by enforcing reasonable disciplinary procedures, and that there is a risk that significant harm to other individuals may occur were Faparusi immediately returned to campus as a student, I finally recommend that his motion for a TRO and/or a preliminary injunction be denied.

As noted, a report and recommendation addressing the motion to dismiss will follow this report and recommendation.

---

[34] *Id*. (citation omitted).

Dated: August 31, 2016                               s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[35]

---

[35]*See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).