IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OLAOLUWA FAPARUSI, | ) | CASE NO. 1:16 CV 1586 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| CASE WESTERN RESERVE | ) | |
| UNIVERSITY, *et al.*, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

## Introduction

Before me by referral[1] in this action by Olaoluwa Faparusi against Case Western

Reserve University (CWRU), and others, alleging violations of the Due Process Clause of

the Fourteenth Amendment and a breach of contract claim arising under state law,[2] is a

motion by all defendants to dismiss the complaint under Rule 12(b)(6) of the Federal Rules

of Civil Procedure for failure to state a claim upon which relief may be granted.[3]  Faparusi

has responded in opposition to the motion,[4] and the defendants have replied to that

opposition.[5]

---

[1] ECF # 10.

[2] ECF # 1.

[3] ECF # 5.

[4] ECF # 6.

[5] ECF # 14.

For the reasons that follow, I will recommend that the motion to dismiss be granted as to all claims and that Faparusi's claims be dismissed with prejudice.

**Facts**

The underlying facts of the complaint were summarized by the District Court in its opinion and order[6] adopting my report and recommendation[7] to deny Faparusi's motion for a temporary restraining order and a preliminary injunction:[8]

Plaintiff was suspended from Case Western Reserve University ("CWRU") for using a women's restroom at a facility while pressed for time during the period he was studying for an examination during his sophomore year on March 1, 2016.  While in a restroom stall, he was verbally confronted by two female students who accused plaintiff of taking pictures in the restroom.  Following receipt of an incident report, CWRU began an investigation and terminated his on-campus housing agreement.  Plaintiff was found to be liable on two charges of Sexual Exploitation and Disorderly Conduct.  Plaintiff appealed the decision within the University hearing process.  His appeal was denied.

Plaintiff . . . argues that CWRU's hearing and decision to suspend him were done in violation of his rights under the Due Process Clause of the Fourteenth Amendment.  Plaintiff

---

[6] ECF # 17.

[7] ECF # 12.

[8] ECF # 3.

further alleges that CWRU and the individual employee defendants breached CWRU's contract with plaintiff in the way the hearing was conducted. [9]

## Analysis

### A.    Standard of review

#### 1.    *12(b)(6) motion to dismiss*

In adjudicating a motion to dismiss for failure to state a claim upon which relief may be granted the court is required to "accept all well-pleaded allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff."[10] Although the complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[11] Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[12] In that regard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

---

[9] ECF # 17 at 1-2.

[10] *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007).

[11] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[13] *Id*.

**B.     Applications of standard**

*1.     Title IX - federal law*

In his complaint and in his response to the motion to dismiss, Faparusi asserts that the federal law claims are based on "the enforcement of the requirements of Title IX and the lack of compliance with the non-administrative requirements of Title IX."[14] Specifically, Faparusi maintains that because CWRU's investigation of the incident at issue was mandated by the requirements of Title IX, and was conducted by CWRU's "Title IX Coordinator," the "controlling authority here is Title IX and this cause of action arises from the application of Title IX."[15]

This Court has previously set forth the relevant portion of Title IX as follows:

> Title IX states, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  The Department of Education and the Department of Justice have also adopted regulations that require schools to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student [ ... ] complaints alleging any action that would be prohibited by" Title IX regulations. 34 C.F.R. § 106.8 (b); 28 C.F.R. § 54.135(b).[16]

---

[14] ECF # 6 at 7; *see also*, ECF # 1 at ¶ 8 ("At all time [*sic*] relevant, Defendants acted under color of state law to enforce the requirements of Title IX.").

[15] ECF # 6 at 8.

[16] *Doe v. Case Western Reserve University, et al.*, No.1:14-CV-2044,  2015 WL 5522001 at * 3 (N.D. Ohio Sept. 16, 2015).

-4-

In addressing the application of Title IX, the United States Supreme Court has held that Title IX applies to institutions and programs receiving federal funds, and so does not reach individuals, such as school administrators.[17] Accordingly, any claims premised on violations of Title IX asserted against the individual defendants George O'Connell and Kimberly Scott do not state grounds on which relief may be granted and so should be dismissed.[18]

As to claims against CWRU based on violations of Title IX, this Court in *Doe,* stated that "the Sixth Circuit has recognized a private right of action where the plaintiff alleges that an educational institution implemented disciplinary actions that discriminated against the plaintiff based on sex."[19] To that end, this Court has stated the analytical framework for considering Title IX claims arising from a disciplinary action:

> "Title IX claims [ ... ] arising from disciplinary hearings are analyzed under the 'erroneous outcome' standard, 'selective enforcement' standard, 'deliberate indifference' standard, and 'archaic assumptions' standard." *Doe v. Univ. of the S.*, 687 F.Supp.2d 744, 756 (E.D. Tenn. 2009), citing *Mallory*, 76 F. App'x at 638. Under the erroneous outcome standard, a plaintiff attempts to demonstrate that he was innocent of the charges presented and wrongly found to have committed an offense in an educational institution's disciplinary proceedings. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). Under the selective enforcement standard, a plaintiff attempts to show that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's

---

[17] *Fitzgerald v. Barnstable School Committee,* 555 U.S. 246, 257 (2009).

[18] *Marshall v. Ohio University,* No. 2:15-CV-775, 2015 WL 7254213, at * 4 (S.D. Ohio Nov. 17, 2015)(citation omitted),

[19] *Doe v. CWRU*, 2015 WL 5522001, at *4 (citing *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638-39 (6th Cir. 2003)).

gender." *Id.* A showing of deliberate indifference "requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory*, 76 F. App'x at 638, citing *Gebser,* 524 U.S. 274, 118 S. Ct. 1989, 141 L.Ed.2d 277. A showing of archaic assumptions requires the plaintiff to demonstrate "discriminatory intent in actions resulting from classifications based upon archaic assumptions." *Id*. at 638-39 (internal citations omitted). Under each of these standards, a plaintiff must demonstrate that the educational institution's challenged misconduct was motivated by sex-based discrimination. *Id*. at 639.[20]

Here, in considering the claims that may raise an issue of compliance with Title IX,

the substance of the individual counts of the complaint are as follows:

- Count One states that Faparusi was the victim of "mistaken identification" in the investigation of the sexual misconduct complaint,[21] and in the decision to "intentionally" disregard the evidence of misidentification and then proceed to charge Faparusi for the conduct in question.[22]

- Count Two alleges that Faparusi was injured because he was found guilty of "disorderly conduct," despite the fact that he was never charged with that offense, but only charged with "sexual exploitation."[23]

- Count Three contends that defendant O'Connell, who conducted the relevant administrative hearing at CWRU, had an *ex parte* communication prior to the hearing with the complainants that purportedly violated the rules for such hearing contained in CWRU's policy manual,[24] and that O'Connell improperly relied on information

---

[20] *Id.*

[21] ECF # 1 at 10.

[22] *Id*. at 12 (¶¶59, 60).

[23] *Id*. at 12-13 (¶¶ 65, 66).

[24] *Id*. at 13-14 (¶¶ 72-74).

from the complainants not otherwise in the record as a basis for the decision.[25]

•    Count Four is a state-law claim that CWRU and O'Connell breached the contract with Faparusi by O'Connell's *ex parte* communication with the complainants.[26]

•    Count Five maintains that CWRU and investigator Kimberly Scott conducted a "biased and malicious" investigation of Faparusi that "intentionally introduced irrelevant and prejudicial information but omitted material information that would have greatly helped the plaintiff's defense."[27]

Before considering these allegations in the complaint under the rubric of Rule 12(b)(6) and the four standards for relief under Title IX that are cited above, I note that Faparusi has not cited to the four standards by which an alleged Title IX violation may be analyzed by a reviewing court, and note further that the defendants also do not cite or apply these standards, but appear to have misread this Court's holding in *Doe* as totally precluding all private actions arising under Title IX involving disciplinary procedures.[28]  That said, I will analyze

---

[25]*Id.* at 14-15 (¶¶ 75-79).

[26] *Id.* at 16-18 (*see*, ¶ 94).

[27] *Id.* at 18-21 (*see*, ¶ 102).

[28] ECF # 14 at 2. The error seems to arise by misunderstanding this Court's holding in *CWRU* that "allegations that an educational institution failed to ... comply with Title IX *administrative* requirements ... do[es] not give rise to a private cause of action." 2015 WL 5522001, at *4 (emphasis added). That holding, which is concerned with instances where the university failed to institute a grievance procedure or otherwise exhibited non-compliance with Title IX administrative requirements, states in its very next sentence that is not directed to cases, such as here, "where the plaintiff alleges that an educational institution implemented disciplinary *actions* that discriminated against the plaintiff based on sex." *Id.* (emphasis added).

the individual counts of the complaint under the erroneous outcome and the deliberate indifference standards, and in so doing  recommend finding that the complaint in its entirety does not allege a violation under the selective enforcement or archaic assumption standards

a.    *Erroneous outcome*

As discussed above, the erroneous outcome standard requires that a plaintiff demonstrate that he is innocent of the charges against him and was wrongly found to have committed the offense in the disciplinary proceeding.  Moreover, in the context of a motion to dismiss, the plaintiff must "plausibly allege that [the educational institution's] actions 'were motivated by sexual bias' or that its 'disciplinary hearing process constitutes a pattern of decision-making whereby the ... disciplinary procedures governing sexual assault claims is discriminatorily applied or motivated by a chauvinistic view of the sexes' to meet the 'erroneous outcome' standard."[29] To that end, a plaintiff may answer "the predominant question"[30] of whether the result of the disciplinary hearing was motivated by gender bias, or that the disciplinary procedures themselves establish a pattern of decision making that applies a chauvinistic view of the sexes, through "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."[31]

---

[29] *Doe v. CWRU*, 2015 WL 5522001, at *5 (internal citations omitted).

[30] *Doe v. Trustees of Boston College,* No.15-CV-10790,  2016 WL 5799297, at * 24 (D. Mass. Oct. 4, 2016).

[31] *Doe v. CWRU*, 2015 WL 5522001, at *6 (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2nd Cir. 1994)).

In that regard, "a single case by an individual who was displeased by the result of a disciplinary proceeding cannot constitute a pattern of decision-making" such as would satisfy the erroneous outcome standard.[32]  Moreover, "a plaintiff's subjective belief that he was the victim of discrimination - however strongly felt - is insufficient to satisfy his burden [under the erroneous outcome standard] to satisfy his burden at the pleading stage."[33]

Here, the complaint plausibly alleges in sufficient factual detail that Faparusi was innocent of the charges against him and that CWRU wrongly found grounds for Faparusi's suspension. Specifically, as noted above, the complaint alleges, with supporting factual detail, a plausible basis to conclude that Faparusi was the victim of mistaken identity and/or that there was sufficient incongruity in the witness descriptions of the alleged perpetrator and in the details of the offense itself "to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding."[34]

But, as stated, Faparusi's complaint must also plausibly allege that CWRU's actions were motivated by "sexual bias" or that its disciplinary hearing process constitutes a "pattern of decision-making" whereby the procedures are "discriminatorily applied" or "motivated by a chauvinistic view of the sexes."  In this case, I recommend finding that Faparusi's complaint does not make factual allegations to support such conclusions.

---

[32] *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 756 (E.D. Tenn. 2009)(citing *Mallory*, 76 F. App'x at 640).

[33] *Doe v. CWRU*, 2015 WL 5522001, at *6 (internal quotation and citation omitted).

[34] *Yusuf*, 35 F.3d at 715.

While, as noted above, the complaint does make conclusory allegations in Count One that CWRU "intentionally" disregarded exculpatory evidence, and further asserts in Count Three, with some greater specificity, that the hearing officer relied on *ex parte* communications and evidence outside the record, and also makes the conclusory allegation in Count Five that the investigator was "biased" against Faparusi, I recommend finding that these assertions are insufficient to support a claim that any procedural flaw in the hearing process or perceived hostility toward Faparusi was motivated by sexual bias.[35]

Indeed, as this Court found in similar circumstances, the complete absence of any factual allegations that include statements by members of the disciplinary tribunal itself, statements from pertinent university officials or patterns of decision-making from past decisions that show the influence of gender bias, reduce the current complaint to single case of an aggrieved individual who was displeased with the result in his case. As such, and as discussed above, the case authority is clear that a single instance cannot constitute a pattern of gender-biased decision-making. Further, the case authority is also clear that even a passionate subjective belief that the plaintiff was the victim of discrimination will not be sufficient at the pleading stage to survive a motion to dismiss.

Accordingly, to the extent that Counts One, Three and Five are understood as claiming a violation of Title IX under the erroneous outcome test, I recommend finding that these counts do not satisfy the requirements of that standard mandated at the pleading stage, and

---

[35] *Doe v. CWRU*, 5522001, at *5.

thus that these claims be dismissed for failure to state a claim upon which relief can be granted.

b.    *Deliberate indifference*

As was the case with the erroneous outcome standard, Faparusi's complaint contains sufficient factual allegations to create a plausible inference that CWRU's disciplinary procedure was flawed and that administrators within that procedure were indifferent to flaws - such as reliance on *ex parte* communications - that may have worked to the detriment of Faparusi's defense.[36]  But, the case authority is clear that to establish deliberate indifference, the claimant must show that an official with authority to address the alleged discrimination against the plaintiff had actual knowledge of the misconduct and failed to respond.[37]

Further, courts have questioned whether deliberate indifference claims can be brought in the case of a disciplined student, such as here.[38]  They have found that this claim is usually "asserted by a victim against a school or university official who *failed* to protect him or her

---

[36] Having noted this, I further note that the exact due process guarantees afforded to criminal defendants or civil litigants are not *per se* transferrable to suspension hearings at private universities, and are not constitutionally mandated in that context. *Flaim v. Medical College of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005)(neither rules of evidence nor the rules of civil or criminal procedure need be applied); *Doe v. Trustees of Boston College*, 2016 WL 5799297, at *15 (citations omitted). Further, students at a private institution have no right to require that officials at that institution institute one particular set of remedies and procedures, and courts are cautioned not to second-guess administrative decision-making in disciplinary matters. *Univ. of the South*, 687 F.Supp. 2d at 757 (quotation omitted).

[37] *Gebser v. Lago Vista Independent School Dist.,* 524 U.S. 274, 290 (1988).

[38] *Marshall*, 2015 WL 1179955, at *8.

-11-

from harassment or otherwise address the alleged misconduct - actions that [university] officials undisputably took, to protect the alleged victim from [the accused]."[39]

That said, and assuming *arguendo* that this case may be viewed as being similar to *Wells* such that deliberate indifference applies here to a disciplinary proceeding, I nonetheless recommend that Faparusi's complaint be dismissed for failing to state a claim upon which relief may be granted.  Specifically, even if Counts One, Two, Three and Five can be read as alleging deliberate indifference to Faparusi's complaints, these claims must nonetheless be dismissed because the counts do not also contain factual allegations that plausibly suggest that any indifference toward Faparusi was because of bias by CWRU against Faparusi due to his gender. [40]

---

[39] *Id; but see*, *Wells v. Xavier Univ*., 7 F.Supp.3d 746, 751-52 (S.D. Ohio 2014)(allowing plaintiff's deliberate indifference claim to survive motion to dismiss where the complaint alleged that the president of the university permitted the disciplinary action against the plaintiff to proceed despite receiving a "warning" from the prosecutor that the "allegations were unfounded" because the university president wanted to make a demonstration to the United States Dept. Of Education Office of Civil Rights that the university was taking sexual assault allegations seriously). This set of circumstances and evidence in *Wells* has been described as "anomalous in its application of deliberate indifference to a challenge to a disciplinary proceeding" rather than to cases of victims alleging indifference to their complaints of inaction. *Doe v. Brown Univ*., 166 F.Supp.3d 177, 191 (D. R.I. 2016).

[40] *Boston College*, 2016 WL 5799297, at 27 (context of summary judgment); *CWRU*, 2015 WL 5522001, at *5 (dismissing claim on deliberate indifference standard because it "did not contain factual allegations that plausibly suggest that [procedural] flaws were based upon bias against Plaintiff's gender"); *Univ. of the South*, 687 F.Supp. 2d at 758.

In sum, and for the reasons stated, I recommend that all the federal law claims asserted- Counts One, Two, Three and Five - be dismissed with prejudice as failing to state a claim upon which relief may be granted.

## 2. *General Fourteenth Amendment Analysis*

Although Faparusi contends that the federal claims here arise under the Fourteenth Amendment to the Constitution as applied through Title IX,[41] which has been discussed above, the defendants have cited numerous state law decisions for the general proposition that the Fourteenth Amendment's Due Process Clause does not apply to the policies and practices of private universities.[42] Whatever the applicability of that law outside the context of Title IX, the federal claims here, as noted, have been pled as arising under Title IX and, as this Court's analysis in *CWRU* makes plain, the necessary standards for resolution of this matter are the four tests for claimed violations of Title IX set forth above.

I note further that the Fourteenth Amendment, of itself, "is not self-enforcing. Rather, § 5 of the Fourteenth Amendment grants Congress the power to enact legislation with the purpose of enforcing the Fourteenth Amendment."[43] Here, to the extent the complaint asserts claims arising from alleged violations of Due Process rights of the Fourteenth Amendment,

---

[41] ECF #1 at ¶¶ 2, 3.

[42] ECF # 5 at 2-4.

[43] *Johnson v. Sutter Delta Medical Center*, No. C 11-03628 SI, 2011 WL 5444319, at * 2 (N.D. California Nov. 9, 2011)(citing *City of Boerne v. Flores*, 521 U.S. 507, 518-19 (1997)).

-13-

it does so by bringing those claims as purported violations of Title IX, and those allegations are treated above.

That said, I also note that despite the fact that Title IX claims of discrimination based on gender, as stated earlier, may be asserted against a private university, the rule is that courts will not interfere with a private universities right to enforce disciplinary rules in matters alleging a general denial of due process"absent a clear abuse of discretion."[44]

Thus, unlike the clear authority which holds that a Section 1983 claim involving a denial of due process may be readily brought against a public university,[45] such claims are more difficult to assert and prove against a private university.  A general claim against CWRU for violating due process in the disciplinary proceeding would not be a claim that CWRU could have provided Faparusi with a better hearing or that the hearing that was conducted failed to met the requirements of a formal trial, but would necessarily be only whether CWRU abused its discretion in conducting the hearing it did; *i.e.*, whether it acted arbitrarily or "whether the proceedings fell within the reasonable range of expectations of one reading the relevant rules, an objective reasonableness standard."[46]

Here, although the jurisdictional bases for the claims is somewhat imprecisely stated, there is no doubt that Faparusi has made his federal claims under Title IX, and not as general

---

[44] *Pierre*, 143 F.Supp. 3d at 712 (citation omitted).

[45] *Flaim*, 418 F.3d at 633 ("the Due Process Clause is implicated by higher education disciplinary decisions")(citation omitted).

[46] *Pierre*, 143 F.Supp. 3d at 713 (citations omitted).

-14-

due process claims. Section One of the complaint states that it is a civil action against the defendants for "committing acts, under the color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States." But then Section Two clarifies the allegation of Section One by stating that "[t]his case arises under the United States Constitution and Title IX."  Moreover, Section Eight is even more explicit in stating that "[a]t all time[] relevant, Defendants acted under the color of state law to enforce the requirements of Title IX."[47]

Finally, as noted above, and in the preceding footnote, Faparusi makes it plain in his response to the motion to dismiss that his complaint "is based on the enforcement of the requirements of Title IX and lack of compliance with the non-administrative requirements of Title IX."[48]

Thus, although Faparusi is entitled as a *pro se* plaintiff to have his pleadings read with leniency, I recommend that there is no reading of his pleadings that will justify seeing in them a claim for federal relief under anything other than Title IX grounds.

### 3.      Breach of Contract - Ohio law - Count Four

Prior to considering the state law breach of contract claim in count four of the complaint, it is initially noted that Faparusi has alleged that this Court's jurisdiction may be

---

[47] In his response to the motion to dismiss, Faparusi again specifically states that "this "this cause of action is based on CWRU's implementation of Title IX;" and further that "Fourteenth Amendment due process applies to the policies and procedures used by CWRU to comply with the Title IX mandate ...." ECF # 6 at 9.

[48] *Id*. at 7.

-15-

found in both a federal question and diversity of citizenship, in as much as he alleges that he is a citizen of Tennessee and that CWRU has its principal place of business in Ohio.[49]  For this reason, CWRU's assertion that this Court may decline to exercise jurisdiction over the state law breach of contract claim[50] is inapposite, because independent jurisdiction exists over that claim because of diversity of citizenship.

In *Valente v. University of Dayton* [51] the Sixth Circuit recognized that the relationship between an enrolled student who has paid his tuition and the school he attends "may reasonably be construed as being contractual in nature."[52]  Yet, at the same time *Valente* further noted that "[c]ontracts for private education have unique qualities and must be construed to allow the institutions governing body to meet its educational and doctrinal responsibilities."[53]

As the district court in *Valente* observed, Ohio contract law requires only "substantial compliance" with a contract and does not permit a finding of breach for nominal or technical departures.[54]  But, as the district judge also noted, Ohio courts in the context of a private

---

[49] ECF # 1 at ¶¶ 1, 2.

[50] ECF # 5 at 6.

[51] *Valente v. University of Dayton*, 438 Fed. App'x 381 (6th Cir. 2011).

[52] *Id*. at 384 (internal quotation and citation omitted).

[53] *Id*. (internal quotation and citation omitted).

[54] *Valente v. Univ. of Dayton,* 689 F.Supp.2d 910, 918 (S.D. Ohio 2010)(citations omitted).

university student discipline case would go further than simply allowing the defense of substantial compliance, and would "uphold discipline which had been imposed in a fundamentally fair manner even if it did not substantially comply with the university's adopted procedure."[55]

On appeal, the Sixth Circuit squarely adopted the view that Ohio law, as relates to a contract between a student and the attended university in the context of a disciplinary proceeding, would hold that the issue is not whether the university "strictly adhered" to "each of the procedural rules" set out in a student handbook, or whether "it could have provided a better hearing," but rather "whether it had abused its discretion - whether it acted unreasonably, arbitrarily, or unconscionably."[56]  In that same vein, and as noted above, the *Pierre* court considered the alleged Ohio law breach of contract claim under the rubric of whether the proceedings "fell within the range of reasonable expectations of one reading the relevant rules, an objective reasonableness standard."[57]

Here, Faparusi asserts that CWRU breached its contract with him as set forth in the Administrative Hearing Procedure.[58]  Specifically, he contends that any *ex parte* communication between the hearing officer and the complainant/ witness:

- constituted a "hearing" of which Faparusi should have been notified;

---

[55] *Id.*

[56] *Valente*, 438 Fed. App'x at 385 (citation omitted).

[57] *Pierre*, 143 F.Supp. 3d at 713 (citations omitted).

[58] ECF # 6 at 11.

-17-

- that the Title IX investigator - not the hearing officer - should have the investigative responsibilities;

- that the *ex parte* communication was inconsistent with Faparusi being allowed to review the evidence.[59]

As CWRU observes, even in the written administrative hearing policy:

- nothing bars the hearing officer from asking questions;

- nothing gives the respondent the absolute right to participate in every interaction the complainant has with an investigator or the hearing officer;

- nothing bars an investigator or the hearing officer from having contact with the complainant prior to the hearing, with or without the participation of the respondent; and

- nothing in the policy - which permits the hearing officer to consider "any relevant information" - eliminates an *ex parte* conversation from the category of relevant information that must be considered.[60]

When Faparusi's allegations are considered not as posing the question of whether CWRU "strictly adhered" to every procedural rule, but in the context of whether the proceeding as it occurred fell within the range of "reasonable expectations of one reading the relevant rules," I recommend that CWRU's motion to dismiss under Rule 12(b)(6) be granted. In that respect, I recommend finding that nothing alleged by Faparusi under the Ohio law breach of contract claim, and reviewed together with the applicable sections of the CWRU Administrative Hearing Procedure, states a claim upon which relief may be granted since the actions of CWRU, while perhaps not perfect, show that the entire process was

---

[59] *Id*. at 11-12.

[60] ECF # 14 at 4-5.

"fundamentally fair"[61] and provide no evidence that the defendants clearly abused their discretion.

## Conclusion

For the reasons stated above, I recommend granting defendants' motion to dismiss Faparusi's complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, and so further recommend that all counts of the complaint be dismissed with prejudice.

Dated: November 30, 2016        s/ William H. Baughman, Jr.
                                 United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[62]

---

[61]*Pierre*, 143 F.Supp. 3d at 713.

[62]*See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).